**Eric OSBORNE, a minor, by his parents and natural guardians, Linda Osborne and Thomas Osborne, and Linda Osborne and Thomas Osborne, in their own right, Plaintiffs,**

v.

**Norman BAKER, D.O., Joseph John Cutry, M.D., Charles Cole Memorial Hospital, Celso L. Backes, M.D., Maple Avenue Hospital, David Buffone, M.D., and William J. Siar, M.D., Defendants.**

Civ. A. No. 80–1827.

United States District Court,
W. D. Pennsylvania.

June 15, 1981.

■■■■■■■■■■■■■

Barton A. Haines, Philadelphia, Pa., Charles E. Evans, Sikov & Love, Pittsburgh, Pa., for plaintiffs.

James A. Wood, Trushel, Wood & Israel, Pittsburgh, Pa., for defendants Norman Baker, D. O., Joseph John Cutry, M. D.

George M. Weis, Weis & Weis, Pittsburgh, Pa., Robert J. Sarno, Williamsport, Pa., Daniel R. Milliard, Coudersport, Pa., for defendant, Charles Cole Memorial Hospital.

Roger Curran, Rose, Schmidt, Dixon, Hasley, Whyte & Hardesty, Pittsburgh, Pa., Roger J. Sarno, Williamsport, Pa., for defendant, Celso L. Backes, M. D.

Paul K. Vey, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for defendant, Maple Avenue Hospital.

William D. Phillips, Washington, Pa., for defendant, David Buffone, M. D.

Herbert Grigsby, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for defendant, William J. Siar, M. D.

## OPINION

MARSH, District Judge.

The above-entitled action was filed in the Eastern District of Pennsylvania on October 14, 1980. Upon motions to transfer venue, the action was transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(a).

In an amended complaint, plaintiffs allege that they are citizens of West Virginia and that the defendants, Norman D. Baker, D.O., is a citizen of Ohio; Joseph John Cutry, M.D., is a citizen of New York; Charles Cole Memorial Hospital is a Pennsylvania corporation with its principal place of business in Coudersport, Pennsylvania; also, Celso L. Backus, M.D., is a citizen of Pennsylvania; David Buffone, M.D., is a citizen of Pennsylvania; and Maple Avenue Hospital is a Pennsylvania corporation with its principal place of business in Dubois, Pennsylvania.[1]

The defendants, Baker and Cutry, filed motions to dismiss alleging lack of diversity. The other defendants have joined in the motions to dismiss.

On May 18, 1981 an evidentiary hearing was held at which the plaintiffs, Thomas and Linda Osborne, testified and presented exhibits on the issue of citizenship. After consideration of the evidence presented at the hearing, the court makes the following:

## FINDINGS OF FACT

Eric Osborne was born on October 29, 1979, at the Maple Avenue Hospital in Dubois, Pennsylvania. As a result of the aforesaid negligence of the defendants, Eric was born prematurely with extensive brain injury consisting of cerebral palsy and mental retardation; allegedly negligent subsequent treatment caused blindness.

The Osbornes were reared in the north central section of Pennsylvania in Warren and Potter Counties. After their respective educations and the completion of Thomas Osborne's service in the United States Army, they returned to Port Allegheny where they planned to earn a living and raise a family.

At the time Eric was born, Thomas was an optician practicing in Port Allegheny being employed by his father-in-law and brother-in-law who were optometrists.

As a result of the brain damage afflicting Eric, the Osbornes felt they had to move in order to be closer to a children's hospital and to earn more money to help pay for the highly extraordinary medical and incidental expenses of raising a multihandicapped child. Approximately $102,000 medical expenses had been incurred up to the date of the hearing.

Despite the need to be near a children's hospital in a large city, the Osbornes chose

1. The citizenship of the defendant William J. Siar, M.D., has not been alleged.

to move to Meadville, Pennsylvania, in June, 1980. Meadville is forty-five minutes from the Children's Hospital in Erie, Pennsylvania, and two hours from the Children's Hospital in Pittsburgh, Pennsylvania. There were no optical centers in Meadville. Thus, Thomas was free to open an optical center and hopefully increase his earnings.

The Osbornes sold their home in Port Allegheny. They moved to Meadville where Thomas opened an optical center in partnership with his brother-in-law who was taking his apprenticeship under Thomas in order to be certified as an optician.

By the end of September, 1980, it became apparent to the Osbornes that the attempt to increase their income by establishing a business in Meadville was not succeeding. The total income from the partnership for the partial year 1980 was only $1,124. (See deposition of Thomas Osborne, p. 37.) Consequently, they decided to open another optical store in another place. They chose Chester, West Virginia.

The reasons the Osbornes selected Chester, West Virginia, as their new residence were:

    a. It was within 38 miles of the Children's Hospital and the Pittsburgh School for the Blind in Pittsburgh, Pennsylvania,

    b. Thomas believed Chester, West Virginia, afforded an excellent opportunity to set up a second optical store which would increase his earnings.

    c. Upon advice of their counsel whom they had engaged in April or May, 1980, the Osbornes believed they would be entitled to federal diversity jurisdiction and a trial in a federal court if they moved to West Virginia. They do not want a state trial in the counties where the defendant hospitals are located or where the defendant doctors practice.

The plaintiffs, Thomas and Linda Osborne, on and since October 4, 1980, have intended to make Chester, West Virginia, their permanent domicile and have intended to become permanent residents and citizens of that state.

On October 4, 1980, the Osbornes leased an apartment in Chester and paid to one Bill Harper $230, which included rent for one month at $130 per month and $100 as security for rent and damage deposit.[2]

In conjunction with their move to Chester, they filed a change of address with the post offices in Meadville and Chester. (See deposition of Linda Osborne, p. 98.)

They moved furniture into the apartment including a crib, and their kitchen appliances and sweepers. (See deposition of Linda Osborne, p. 98.)

Prior to October 4, 1980, the Osbornes were residing with relatives in Meadville.

Since October 4, 1980, the Osbornes have spent approximately 10 or 15 days off and on in Chester. The rest of the time Thomas has been working as an optician in Meadville; Linda and Thomas have been residing with relatives in Meadville and Eric has been confined to hospitals in Pennsylvania repeatedly which required his parents to stay with relatives who resided near the hospitals:

    a. In Children's Hospital, Pittsburgh, from 10/21/80 to 10/23/80;

    b. In Hamot Hospital, Erie, from 12/18/80 to 12/20/80;

    c. In Hamot Hospital, Erie, from 1/7/81 to 1/16/81; and

    d. In St. Vincents Hospital, Erie, from 2/27/81 to 3/25/81.[3]

The following acts were performed by the Osbornes after they moved. The specific dates were not proved.

    1. A bank account was opened at the First National Bank of Chester.

    2. Thomas and Linda hold valid West Virginia driver's licenses and have rescinded their Pennsylvania driver's licenses.

---

**2.** The copy of the lease admitted into evidence was not dated or signed by the lessor. No receipts for rent for the succeeding months were offered in evidence.

**3.** Deposition of Linda Osborne, pp. 61–64.

3. Titles to the two motor vehicles owned by the Osbornes were transferred to West Virginia.

4. West Virginia State income taxes were paid for 1980 by the Osbornes.

5. Pennsylvania State income taxes were prorated to cover only the first nine months of 1980.

6. Linda Osborne is registered to vote in West Virginia.

7. The Osborne charge accounts were changed to reflect their new residence in Chester.

8. In May, 1981, the Osbornes as citizens of West Virginia made applications for food stamps and medical assistance in West Virginia and were accepted by the West Virginia Department of Welfare.

9. Thomas Osborne is a member of the West Virginia "Over 25 Club" which is a bar at Newell, West Virginia.

As of the time of the hearing, Thomas had not opened or leased an optical store in Chester. His business accountant resides in Port Allegheny, Pennsylvania.

### CONCLUSIONS OF LAW

On October 4, 1980, the Osbornes intended to establish a permanent domicile in West Virginia.

Since it appears that prior to filing their complaint on October 14, 1980, the plaintiffs moved to a new residence in Chester, West Virginia, on October 4, 1980, intending to remain there permanently, diversity jurisdiction exists between the plaintiffs and all the defendants.[4]

The motions of the defendants to dismiss the action for lack of diversity jurisdiction will be denied.

---

**4.** It is assumed that the added defendant William John Siar, M.D., is a citizen of a state other than West Virginia.